## Graybill, Trustee, v. Goodman

*Geisenberger & Geisenberger,* for plaintiff.
*Windolph & Mueller,* for defendant.

GROFF, P. J., October 5, 1931.—In examining the evidence in this case we find that the Keystone Furniture Company, Inc., of which John S. Graybill, Jr., is trustee in bankruptcy, brought suit in the Court of Common Pleas of Lancaster County against Etta J. Goodman, also known as Mrs. Miles F. Goodman, to May Term, 1931, No. 18, and filed a statement in said case in the said court on April 16, 1931. To this statement defendant filed an affidavit of defense alleging new matter on June 15, 1931, and to this affidavit of defense plaintiff filed a reply on June 25, 1931. This suit in the court of common pleas has not been disposed of or tried.

The plaintiff in the above suit, learning that Etta J. Goodman, who is the owner of a certain mortgage given by Miles F. Goodman to Samuel Grabosky, on premises No. 912 Marietta Avenue, Lancaster, Pa., in the sum of $25,000, which the said Etta J. Goodman acquired from Samuel Grabosky by transfer on August 7, 1930, was about to transfer the same to some person, or persons, unknown to the orator in the bill as collateral security for the debt of the Trade-In-Furniture Company, filed a bill in equity, praying the court "to issue an injunction, preliminary until hearing and final thereafter, restraining and

strictly enjoining Etta J. Goodman from selling, transferring, assigning, releasing, or in any other way disposing of her right, title and interest" to the certain mortgage above referred to.

In the said bill the plaintiff states that the said mortgage is the principal asset of the said Etta J. Goodman, and "that if she is permitted to transfer this mortgage, that your complainant will have no means of satisfying his claim or demand against Etta J. Goodman and will be irreparably injured, unless the relief prayed for herein is granted."

Defendant, in the answer filed to the said bill in equity, denies in general terms the facts alleged in paragraph five of plaintiff's bill of complaint, and adds: "I aver that it was and is my intention, subject, however, to the dissolution of the preliminary injunction granted in this case, to transfer said mortgage to a banking institution or individual as collateral security for a line of credit to be extended by said banking institution or individual to the Trade-In-Furniture Company, a Pennsylvania corporation. Said line of credit, as intended to be extended prior to the filing of said bill of complaint, was to be for a sum not exceeding ten thousand dollars ($10,000) and was to be secured by a note or notes of said Trade-In-Furniture Company to the banking institution or individual extending said line of credit."

Defendant avers that she is "the holder of eighty-four per cent. of the capital stock of said Trade-In-Furniture Company, having a par value of forty-two hundred dollars ($4200) and a book value in excess of said sum. Said line of credit was to be utilized by Trade-In-Furniture Company in the regular course of its business, thereby permitting said Trade-In-Furniture Company to conduct its business to the greater advantage and profit of its stockholders, including myself [Etta J. Goodman]."

On the hearing to dissolve the preliminary injunction the plaintiff in the bill and the deputy recorder of deeds of Lancaster County were called as witnesses, and from them nothing was elicited that would support the contention in the bill. Therefore, the question remains—Should this transfer be restrained by reason of the admission in the answer to the allegations of fact in the bill, especially the one above stated, in which the plaintiff in the bill, in paragraph six, says: "That this intended transfer by Etta J. Goodman, defendant, is with intent to hinder, delay and defraud her creditors." This is denied, and the defendant in the bill refers to the facts averred in paragraph six of her answer, which are as above stated.

Paragraph eight of the plaintiff's bill alleges: "That the mortgage which Etta J. Goodman, this defendant, holds is the principal asset and is the only real estate asset of which she is possessed and that if she is permitted to transfer this mortgage, that your complainant will have no means of satisfying his claim or demand against Etta J. Goodman and will be irreparably injured, unless the relief prayed for herein is granted."

In reply to that, Etta J. Goodman denies the facts alleged in paragraph eight of the bill of complaint, and avers "that, in addition to said mortgage, I own certain shares of stock in Trade-In-Furniture Company, as hereinabove set forth, and other valuable assets. I aver that I am solvent and responsible, and I aver, as hereinabove set forth, that I am not indebted to the complainant in this case."

The admission in defendant's answer is that she intends to transfer the entire $25,000 mortgage to secure a $10,000 indebtedness, to be contracted by the corporation of which she is a stockholder.

If the defendant transfers this $25,000 mortgage to secure a loan of $10,000, and if it is good, and there is no evidence that it is not, she would have in this

mortgage an equity of $15,000, her eighty-four per cent. of stock in the Trade-In-Furniture Company, and whatever minor assets she possessed.

In Redfield and Rice Manufacturing Co. *v.* Dysart, 62 Pa. 62, 66, the court said: "The rule is well settled that where there is proof, however slight, of fraud, the burthen of proving payment is thrown on the vendee, and other evidence than the receipt to the deed is necessary to establish the payment of the purchase money. . . ."

Now "fraud in equity" is defined in Ballentine's Law Dictionary as being "all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another. This, of course, includes anything which would come under the definition of fraud in law, but it also goes somewhat further, as many acts, transactions or circumstances are considered fraudulent in equity which would not necessarily be so regarded at law."

Has the plaintiff in this bill shown fraud on the part of the defendant in transferring the mortgage in question as collateral to secure a $10,000 loan? The amount claimed by the plaintiff in the suit which he has brought against the defendant is unliquidated. The aggregate amount of his claim is $7800. The balance of the mortgage which will not be pledged is $15,000. Defendant's interest in the Trade-In-Furniture Company is, according to the pleadings, in excess of $4200, and, therefore, it can hardly be said that if Etta J. Goodman transfers the mortgage in question to the Farmers Trust Company she is committing a fraud on the plaintiff.

We are assuming that what is set out in the pleadings is correct, namely, that the mortgage is to be transferred to secure a loan of $10,000. Etta J. Goodman, the defendant, having, according to the pleadings, a sufficient amount of assets in her hands to pay any debt that is due to the plaintiff, the burden of proving that she has sufficient assets would not be cast upon her.

There is in our mind some doubt as to whether we should permit this transfer to be made. An examination of the evidence, however, shows nothing indicative of fraud or collusion, nor is there anything which tends to throw doubt upon the honesty and fairness of the transaction so far as the transfer of the mortgage to secure a loan of $10,000 is concerned. If there were anything in either the pleading or proof that might tend in the least degree to show that this transfer was for the purpose of defrauding plaintiff we would continue this preliminary injunction. There being nothing of this kind shown, we feel that it would be unfair to the defendant to continue the preliminary injunction, and that the plaintiff will not be injured by its dissolution.

If, however, this collateral should be applied by the transferee of the mortgage to any other debt then the securing of the new loan of $10,000 referred to in the bill and answer, it would, in our mind, indicate a fraudulent conveyance of this mortgage on the part of both the transferor and the transferee and would, in all probability, be set aside by this court.

For the reasons stated above we dissolve the preliminary injunction which we originally granted in this matter, and permit the defendant in the bill to transfer her mortgage to secure collaterally a $10,000 loan for which she had arranged before the filing of this bill.

### Decree

And now, October 5, 1931, the preliminary injunction granted in this case is dissolved, at the costs of the plaintiff.

From George Ross Eshleman, Lancaster, Pa.