## WILLIAM W. CHARLES

### V.

## W. L. LASHER.

1. SALE—DELIVERY.—As between vendor and purchaser, and as against strangers and trespassers, the title to personal property passes by sale without delivery, but as against subsequent purchasers, attaching creditors. mortgagees and others in like relations, to render a sale valid there must be a delivery of the property, either actual or constructive.

2. DELIVERY TO CARRIER SPECIALLY DESIGNATED.—Where goods are delivered by a vendor to a carrier *specially designated* by the purchaser, the carrier is regarded as the agent of the purchaser, and the delivery is a good delivery to the purchaser.

3. DELIVERY TO COMMON CARRIER.—In cases where the purchases are made between parties who are distant from each other, and nothing is said as to the way the goods are to be sent, a delivery by the vendor to a common carrier in the usual and common course of business, tranfers the property to the vendee.

4. DRAYMAN—COMMON CARRIER.—The court is of opinion that it is very doubtful if a truckman or drayman who carries goods from one part of a city to another, is to be regarded as a common carrier within the full legal meaning of the term.

5. QUESTION OF LAW.—Where there is a contest as to whether certain acts have been done essential to pass the title of property, ownership is a question of law to be determined by the finding of certain facts ; the jury are to find the facts and the court to state the conclusion or the law.

APPEAL from Circuit Court of Cook county; the Hon. KIRK HAWES, Judge, presiding. Opinion filed June 23, 1886.

This was replevin by appellee against appellant for a piano. It appeared from the evidence that in February, 1883, Lasher went to the salesroom of the Chicago Piano Storage Co. to advance money on a mortgage which he was taking on a piano being sold by said company to a Mrs. M. E. Potter. Lasher testified, on the trial, as follows: "Was present at the sale and saw and heard the storage company sell to Mrs. Potter, the piano. After the bargain was made Mrs. Potter made chattel mortgage and notes and gave them to me and I advanced the money for the piano. After the sale and at the

Charles v. Lasher.

same time of the acknowledgment of the mortgage, I saw the piano put upon a dray and heard the storage company's salesman tell the drayman to take the piano to Mrs. Potter's residence, at No. 38 E. Harrison street. I did not go with the piano nor see it delivered at Mrs. Potter's house, and I never saw the piano from the time I saw it put upon the dray until I saw it in Mr. Charles' office." It appeared from the evidence of Mr. D. H. Tolman, who was a loaner of money, that on May 22, 1883, G. C. Wheeler, manager of the Chicago Piano Storage Company, produced to Tolman a warehouse receipt for the piano, which receipt was issued by the proprietors of the Garden City Warehouse, and said receipt was assigned by Wheeler as secretary of the storage company, and was placed in Tolman's hands as collateral security to the note of the storage company, on which Tolman then and there advanced one hundred dollars. Afterward Tolman sold the warehouse receipt, under the power in the note, to Charles. Charles gave the receipt to an expressman, with directions to go to the warehouse, surrender the receipt and bring the piano to his office; and after the piano had been brought to his possession, Lasher took it on the replevin writ. It further appeared that the Chicago Piano Storage Company failed about May 25, 1883; and also that Mrs. Potter paid to Lasher the two notes first coming due, after the making of the mortgage, but defaulted when the third note came due; and that at that time, May 20, 1883, the piano was not at her house.

The court gave to the jury the following instructions, at plaintiff's request: " If the jury believe from the evidence that the plaintiff in this case held the chattel mortgage on the piano in question, and the notes secured thereby, which have been introduced in evidence, made by Mrs. M. E. Potter on purchase by her of said piano from the Chicago Piano Storage Company, and the delivery of the same to her, if you find from the evidence it was delivered to her, and that some of said notes were past due and unpaid at the time this suit was commenced, and further find from the evidence that the plaintiff had before that time, while holding said notes

Charles v. Lasher.

and mortgages as owner, demanded possession of said piano from the defendant, and he had refused to give it up, then the plaintiff was entitled to such possession, and the jury will find for the plaintiff.

2. "The jury are instructed that the mortgage introduced in evidence made by Mrs. M. E. Potter, was a lien upon the piano therein described if owned by her from the date of record, thereof, to wit, from the 28th day of February, 1883, so long as any of the notes secured thereby had not matured; and that such lien was paramount to any adverse claim against said piano acquired subsequent to such date of record, and entitled the owner and holder of said mortgage to take possession of said piano wherever found upon default in payment of any of said notes. And if the jury believe from the evidence the said M. E. Potter was the owner of the piano in question, and that the plaintiff owned and held said mortgage on the same, and the notes secured thereby, and that at the time he commenced this suit, to wit, on the 30th day of July, 1883, some of said notes were past due and unpaid, then he had a right to take possession of said piano under said mortgage wherever found, as against any person acquiring an adverse claim therein after the record of said mortgage, February 28, 1883."

The verdict and judgment was for plaintiff, and the case comes here by appeal.

Messrs. FRANK J. SMITH & HELMER, for appellant.

MORAN, J. As between vendor and purchaser, and as against strangers and trespassers, the title to personal property passes by sale without delivery; but as against subsequent purchasers, attaching creditors, mortgagees and others in like relation, to render a sale valid, there must be a delivery of the property, either actual or constructive.

In this case there is no pretense of constructive delivery, and while it is plain that there was a sale of the piano from the storage company to Mrs. Potter, and that the same was paid for by her, it is very doubtful whether the evidence introduced proves an actual delivery of the piano to her. The burden of proving such actual delivery rested upon the

plaintiff, and it was his duty to produce to the jury, evidence to establish such fact of delivery. The proof is that the piano was put upon a dray and the drayman was ordered to deliver it at the house of Mrs. Potter. When goods are delivered by a vendor to a carrier specially designated by the purchaser, the carrier is regarded as the agent of the purchaser, and the delivery is a good delivery to the purchaser. Bradford v. Mareby, 12 Ala. 520; Cross v. O'Donnell, 44 N. Y. 661.

And in cases where the purchases are made between parties who are distant from each other, and nothing is said as to the way they are to be sent, a delivery by the vendor to a common carrier, in the usual and common course of business, transfers the property to the vendee. McGuder v. Gage, 33 Md. 344; Benj. on Sales, Sec. 181; Comstock v. Affcolter, 50 Mo. 411.

But even if we assume that the drayman to whom the piano was given, in this case, was a common drayman, who held himself out to carry goods from one place in the city to another for hire, yet we think a delivery to him can not be regarded, in law, as a delivery to the purchaser. Such a carrier may, as to goods which he undertakes to carry for hire, assume the duties and obligations of a common carrier, but it is extremely doubtful whether such draymen or truckmen who carry goods from one part of a city to another, are to be regarded as common carriers within the full legal meaning of the term. Bund v. Dale, 8 Carr. & Payne, 207; Moses v. Boston & Marine R. R. Co., 24 N. H. 71.

It is not shown, however, in this case, that the drayman who was directed to deliver the piano, and who was in charge of the dray on which it was placed, was a common or public drayman; and in view of the fact that it is a very general practice in this city for business houses to deliver at the homes of their customers bulky articles purchased, the inference is strong that the drayman who was directed to deliver the article in this case, was the servant of the Chicago Piano Storage Company, and driving a dray owned by them, and used in their business. If so, delivery to him was not delivery to or for the purchaser, and unless from other facts in

this case the jury could find the delivery at the house, no delivery was proved. We do not say that, from all the evidence, the jury could not possibly infer delivery, but the grounds for such inference were at least slight, and under such conditions accuracy in instructions was essential to guide the jury, and we are of the opinion that the court committed an error in the second instruction set out in the above statement of facts.

Where, as in this case, there is a contest as to whether certain acts have been done essential to pass the title of property, ownership is a question of law to be determined by the finding of certain facts. The court left it to the jury to find from the evidence whether Mrs. Potter was the owner of the pro$_1$-erty in question. This was leaving to the jury a question of law. As against the storage company and all persons not standing in the relation of subsequent purchasers, she was the owner; but as against defendant, whether she was the owner in law depended upon the point of delivery. In Ennis v. Lamb, 10 Bradwell, 454, the court below left it to the jury to find, from the evidence, whether a party became the lawful, *bona fide* owner of a certain house in question, and this court held that a question of law was thus submitted to the jury, and reversed the case.

Where the conclusion is one of law from facts to be found, the jury are to find the facts and the court to state the conclusion or the law, and to submit mixed questions of law and fact to the jury is error. White v. Murtland, 71 Ill. 250; Harding, Ex., v. Worthman, 84 Ill. 446.

There is in the second instruction no reference to the first, in which reference as to delivery is made, and no instruction was given in the case, which told the jury what would amount to a delivery which would make Mrs. Potter the owner as against a subsequent mortgagee or pledgee of the piano. The second instruction was an instruction disposing of the entire case, and not controlled or modified by connection with or reference to any other.

For the error pointed out the judgment will be reversed and the case remanded.

Reversed and remanded.